**TEXAS–NEW MEXICO UTILITIES CO. v. STATE ex rel. CITY OF TEAGUE et al.**

No. 14549.

Court of Civil Appeals of Texas.
Fort Worth.

June 18, 1943.

Rehearing Denied Sept. 17, 1943.

58

Bartlett, Carter & Carter, of Marlin, and Crenshaw, Dupree & Milam, of Lubbock, for appellant.

Gerald C. Mann, Atty. Gen., Richard H. Cocke, W. V. Geppert, and George W. Barcus, Asst. Attys. Gen., and Geppert, Geppert & Victery, of Teague, for appellee City of Teague.

BROWN, Justice.

The City of Teague, Texas, in the year 1907, had a population of less than 5,000 inhabitants, and, from such date to the day of the trial of this cause, said city has had a population of less than 5,000 inhabitants.

This statement of facts is made for the purpose of showing that said city at no time pertinent to the issues before us ever became or could have become a "Home Rule City".

It is conceded that said city is an incorporated municipality having attained such status under the statute of the State of Texas now known as Article 961, Revised Civil Statutes.

This statute vests such a city "with all the rights, powers, privileges and immunities and franchises * * * conferred" by and under Title 28, which governs cities, towns and villages in the State of Texas.

Under Article 962, R.C.S., among the general powers conferred upon such a city is that it "may ordain and establish such acts, laws, regulations and ordinances, not inconsistent with the Constitution and laws of this State, as shall be needful for the government, interest, welfare and good order of said body politic and under the same name shall be known in law, and be capable of contracting and being contracted with, suing and being sued, impleading and being impleaded * * * in all courts," etc.

Article 1016, R.C.S., vests in such a city as Teague "exclusive control and power over the streets, alleys, and public grounds and highways of the city, * * *" etc.

On July 1, 1907, the said City of Teague, by ordinance duly enacted, granted to one J. F. Guggolz and his associates, successors and assigns, a franchise which authorized said Guggolz to build, operate and maintain for a period of thirty-five (35) years, after the passage of such ordinance, an electric light plant in the City of Teague, for the purpose of supplying and furnishing the citizens and inhabitants of such city with electric lights, and authorizing Guggolz to erect and maintain over and through the streets, avenues and alleys of said city the poles, wires and equipment necessary to reach and serve the people of Teague.

By successive assignments, all rights under the contract, or franchise, given Guggolz were sold to several natural persons and corporations until on June 11, 1928, when Texas Utilities Company, a private corporation, became the assignee thereof, and that such company thereafter changed its name to Texas-New Mexico Utilities Company.

Thus it will be seen that if the above mentioned contract, or franchise, is valid and enforceable, it expired on July 1, 1942—thirty-five (35) years after it became effective, unless it has been extended in some lawful manner.

On November 26, 1940, the last named Utilities Company, acting through its manager, addressed a letter to the mayor and city councilmen of Teague, requesting the said governing authorities of such city to extend the franchise of said company "for a period of ten (10) years, dating from the expiration of our franchise, which I understand expires in 1942."

On the 14th day of February, 1941, the said governing body of Teague passed and adopted an ordinance refusing and denying an extension of the franchise, and in such ordinance gave the said Utilities Company six months after the expiration of the said franchise in which "to close out its business in said city and remove its plant or system, and all machinery and equipment in connection therewith".

A copy of such ordinance was forthwith delivered to the Utilities Company.

On July 8, 1942, after the expiration date of the aforesaid contract, or franchise, the State of Texas instituted suit through the

Attorney General, on the relation of the City of Teague, same being in the nature of a Quo Warranto proceeding to compel the Texas-New Mexico Utilities Company to remove its electric transmission and distribution lines from the streets and alleys of the City of Teague.

Such petition alleged the proper status of said city and the facts above enumerated, and averred that the said defendant has continued to distribute and sell electric light and power in such city without the consent of same and that it would continue to do so unless compelled by order of court to desist therefrom and to remove its plant and distribution system from such city. It prayed for proper injunctive relief to grant the relief prayed for.

The defendant denied generally all such allegations and specially denied that it ever became subject to any of the conditions or limitations found in the Guggolz franchise, and averred that it had a right to enter upon and remain on the streets and alleys of such city under the provisions of Articles 1435 and 1436 of the Revised Civil Statutes of Texas.

It further alleged that on February 26, 1915, Guggolz transferred his franchise to one W. D. Alexander, and that on March 30, 1915, Alexander transferred same to Telluride Power Company of Texas, a private corporation, which, at the time of such assignment, was incorporated under the laws of Texas as an electric current power corporation, with power to manufacture, transport and sell electric power to individuals, the public and municipalities for light, heat, power and other purposes, and to construct, maintain and operate power plants, sub-stations and such poles, wires and other devices that might be necessary to operate such lines at and between different points in the State of Texas; and that on the 30th day of March, 1915, said company, with the knowledge and with the express or implied consent of the governing body of said city, entered upon the streets and alleys of said city and constructed and maintained its system of poles and wires over and upon the streets and alleys of said city, and continued to so use and occupy said streets and alleys until about the 9th day of December, 1923, when it sold and transferred to Community Power and Light Company of Texas all its franchises, permits, easements and rights-of-way and its electric light system in all places where it operated, including that and those in said

City of Teague. That said last named Power and Light Company was incorporated under the laws of Texas, and the allegations with reference to its acts and rights are like those alleged with reference to the Telluride Power Company, supra. It is next alleged that Community Power and Light Company, on or about June 11, 1928, sold and transferred to Texas Utilities Company all of its franchises, privileges, lines, rights and other property, including all of its rights of whatsoever character in and upon the streets and alleys of the City of Teague; and that said assignee at such time was an electric current and power corporation, incorporated under the laws of Texas and having all of the powers granted such corporations by the provisions of said Article 1435, and was then and thereafter engaged in the business of manufacturing and transporting electric current over a system of high tension wires and distribution systems connected therewith in and between various cities and towns in the State of Texas, including said City of Teague.

That the governing body of said City, at said time, knew that said assignee Company had entered on its streets and alleys and was engaged in constructing and maintaining a system of poles and wires for transmission and distribution of electric current and knew and was charged with knowledge that said assignee was a corporation incorporated under the laws of the State of Texas, having power under such laws to enter upon the streets and alleys of any incorporated city or town with the consent of the governing body; and that the governing body of the City of Teague knew that from and after the entry of the assignee upon the streets and alleys of said city, it was expending large sums of money in the maintenance and the extension and improvements of said transmission and distribution lines within the City of Teague, and expressly or impliedly consented to its use and occupancy of such streets and alleys.

It is next alleged that the said assignee changed its name to Texas-New Mexico Utilities Company, which last named company continued to use and occupy the streets and alleys of said city and continued to construct and maintain its said system and to extend and improve same with the knowledge of said city's governing body and at a cost exceeding $23,600; and that said governing body never at any time protest-

ed or objected to any extension or the improvements made, or to the use and occupancy of said company of the streets and alleys of said city, until in February, 1941, when they passed an ordinance forbidding said company to use the streets and alleys; and that said city was estopped to deny that the occupancy of the streets and alleys was without their consent.

In the alternative, this company alleged that if it should be held that it is without right to maintain its distribution system in said city, it had made numerous extensions of its lines through said city for the purpose of serving more than one hundred (100) customers who live outside the said city's limits and to carry and transmit electric current to villages and communities adjacent to said city; that in order to continue to serve the same it is necessary to maintain certain poles and lines running through said city, and it would cost said company approximately $7,000 to change its poles and lines for such service; and that under existing priority rules and regulations it would be impossible to procure the materials necessary for such change and construction, and it would be compelled to discontinue service to such outside citizens and communities.

The cause was tried to the court and judgment rendered as prayed for by the relator, and the respondent was given twelve (12) months from the date of the decree within which to comply therewith.

Having excepted to the judgment, the relator requested the trial court to fix the amount of a supersedeas bond and to give respondent the right to thus supersede the judgment. This request was granted, bond was made and the cause is before us for review.

Respondent presents four propositions, or points:

(1) That the undisputed evidence having shown that appellant electric light and power corporation and its predecessor corporations of like nature had constructed its transmission and distribution lines on the streets of the City of Teague, and such city, by acquiescence over a long period of years, had impliedly given its consent thereto, the court was without authority to enjoin appellant from furnishing light and power to the inhabitants of such city and to require appellant to remove its lines from the city's streets, because, by virtue of Articles 1435 and 1436, R.C.S., that authorize such power corporations as appellant to construct their lines on the streets and alleys of a city, with the consent of the governing body thereof, the right of appellant was a statutory right which proceeds from the state, when the consent of the governing body of a city is given, and such consent having been given, in the instant case the appellant's rights became vested and could not be abrogated by any action taken by the city.

(2) The finding of the trial court that appellant was distributing and selling its electric current, within the corporate limits of the City of Teague, without the consent of such city, is contrary to the undisputed evidence and is without support in the evidence, because the undisputed evidence shows that the city has acquiesced in the use of its streets by appellant and its corporate predecessors over such a long period of time that the implied consent of the city arises as a conclusive presumption of law.

(3) The finding that the poles, wires, etc., placed within the corporate limits of said city, were so placed therein by appellant and its corporate predecessors under the rights granted to Guggolz in his franchise, is contrary to the undisputed evidence and is without support in the evidence in that the undisputed evidence shows that appellant and its corporate predecessors are all corporations chartered under the provisions of Article 1435, R.C.S., and possessed the power under Article 1436, R.C.S., to enter upon the streets and alleys of any incorporated city for the purpose of constructing and maintaining its lines, wires and poles, with the consent of the governing body of such city, and the evidence in the instant case does not show that appellant and its corporate predecessors were not proceeding under the powers granted in said statutes.

(4) The finding that the appellant at no time while it operated its electric system in the City of Teague did so under any claim, privilege or right under any of the statutes invoked by appellant, and that the governing body of said City did not have knowledge that appellant and its corporate predecessors were using the said streets and alleys under any claim of a privilege or right granted it under any of the said statutes, is contrary to the undisputed evidence and is without support in the evidence, in that the undisputed evidence shows that appellant and its corporate predecessors are such corporations as were and have been

chartered under the provisions of Articles 1435 and 1436, R.C.S., with all the powers therein granted, and the governing body of said city was charged as a matter of law with notice of the statutory rights of appellant. We see no merit in the propositions presented.

■ It is the duty of municipal governments to furnish its citizens with lights, streets, water and such other public conveniences as are necessary for the protection and benefit of its citizens; but it is equally true that the municipality may contract with some other person or corporation to perform such service. Neal v. San Antonio Water Supply Co., Tex.Civ.App., 218 S.W. 35, writ refused.

We see no distinction that may be drawn between the power of a large "Home Rule" city to thus contract and that of the smallest municipality that may come into being by virtue of the statutory authority enacted by the law-making body of Texas.

A case, insofar as the original contract is concerned and its successive assignments, very much like the case at bar, is that of Athens Tel. Co. v. City of Athens, Tex.Civ. App., 182 S.W. 42, writ refused. In such case it was held that the last assignee of the contract right to furnish telephone service to the citizens of such city was operating its business in such city by virtue of the original contract, and that the condition imposed in such contract was not only binding on the original contracting party but likewise was binding on the last and complaining assignee.

In that case the rate to be charged the citizens of Athens was fixed by the contract although it is well established that the power to fix rates of public service companies was not only not vested in such a municipality, but was expressly reserved to the state.

■ We hold that the appellant, in the instant suit, acquired whatever rights it possessed to operate an electric light and power business within the City of Teague and to use the streets and alleys of said city for such purpose from and is dependent upon the original contract made with Guggolz, of which contract, or franchise, it became the owner by successive assignments.

■ And we further hold that, after entering upon the duties and acquiring the rights imposed and granted by such contract, or franchise, its rights have not been and are not now enlarged by reason of the provisions of Article 1435 and 1436, R.C.S., so as to relieve them of the express limitation of such rights to the period, or term, of thirty-five (35) years from and after such contract, or franchise, was executed and entered into by the original contracting parties.

Strictly speaking, the limiting of the term during which the contract, or franchise, should exist—the very lifetime of same—cannot be said to be a "condition" imposed by the contract, as such term is generally accepted.

■ It is too well settled to even evoke an argument to the contrary that no municipality may ever grant an exclusive franchise, or monopoly, to any natural or artificial person. Crouch v. City of McKinney, 47 Tex.Civ.App. 54, 104 S.W. 518, writ refused, citing Nalle v. City of Austin, 85 Tex. 520, 22 S.W. 668, 960.

It is readily seen that a contract, or franchise, may be limited as to its term of existence.

■ We furthermore hold that the appellant has acquired no right to continue to operate in the City of Teague by virtue of any asserted acquiescence in such right by said city, and that any such right as was acquired under the original contract, or franchise, has not been extended by implication.

■ And we hold that the City of Teague has given no implied consent to appellant to continue its operations in said city; and that no such implied consent has arisen as a matter of law, under the facts in the instant suit; and that there is no issue of estoppel presented.

The following authorities sustain our views and the judgment of the trial court: Detroit United Ry. Co. v. City of Detroit, 229 U.S. 39, 33 S.Ct. 697, 57 L.Ed. 1056; City of Geneseo v. Illinois Northern Utilities Co., 378 Ill. 506, 39 N.E.2d 26, writ of certiorari denied by the U. S. Supreme Court, 316 U.S. 670, 62 S.Ct. 1046, 86 L.Ed. 1746; and State v. Missouri Standard Telephone Co., 337 Mo. 642, 85 S.W.2d 613—a case in which the statutes involved and the facts presented are "on all fours" with the case at bar.

Two other points are presented, as follows:

(5) The undisputed evidence having shown that a portion of the power lines

was constructed over the city's streets for the purpose of serving customers residing beyond the corporate limits of the city and that the removal thereof would result in great damage to the power company and would probably result in rendering it unable to serve such outside customers, the trial court was without authority to render judgment commanding the company to remove such lines.

If, as we believe, the power company is bound by the limitation of the life of its franchise to thirty-five (35) years, there is no merit in the contention.

The respondent used the streets for its personal gain and when its right to occupy the streets has expired, it must find some way to serve its customers, if it has such outside of said city, by lines erected beyond the city boundaries.

(6) It is contended that the power company's right to maintain its lines on the streets of said city was acquired either as a matter of law, or as a quasi public contract, and therefore neither the officers of the power company, nor its agents, nor the agents and representatives of the city, could, after such rights had attached, either limit or construe the rights theretofore acquired by any statement or declaration, and, therefore, the trial court erred in admitting in evidence the testimony concerning the various efforts made by the representatives of the power company to obtain an extension of the Guggolz franchise, or in any way recognizing that appellant's rights were claimed only under the said franchise.

It occurs to us that appellant, having pitched its right upon the premise that by shifting the scenery from mere private individuals to corporate entities that assert some right under Articles 1435 and 1436, R. C.S., which are not enjoyed by private citizens, and that this shifting was done while the governing body of the City of Teague looked on, and that, under such circumstances, the governing body of such city has thus given its implied consent to the use of its streets by the appellant and its corporate predecessors of like kind, and cannot now be heard to say that the right of such corporate entity to use its streets has expired, the evidence was admissible to show that until this suit was filed and respondent made its defense thereto, it made no open claim to any right except that acquired under the Guggolz franchise, and the city

was never put on any notice that it was acquiescing, or would be held to have acquiesced in any right other than that vouchsafed by the said existing franchise.

But, if the evidence were held to be improperly admitted, no reversible error would appear, in that the cause was tried to the chancellor, and, unless there is no evidence of probative value to support the judgment, the admission of such testimony was harmless.

To sustain appellant's theory here presented is tantamount to saying that appellant, either through accident or deliberate design, has acquired the right to a perpetual franchise to serve light and power to the citizens of the City of Teague, when neither the city nor the State of Texas is empowered to grant such privilege.

This cannot be the law!

All points and propositions are overruled and the judgment of the trial court is affirmed.