[No. 5827. Decided November 23, 1905.]

THE STATE OF WASHINGTON, *on the Relation of Spring Water Company, Appellant,* v. THE TOWN OF MONROE *et al., Respondents.*[1]

COUNTIES—COUNTY COMMISSIONERS—FRANCHISE FOR LAYING WATER PIPES IN HIGHWAY—AUTHORITY TO GRANT. The county commissioners have no power to grant a franchise or permit to a water company for the purpose of laying water pipes under or along a public highway, since the power must be derived from the legislature, and cannot be implied from Bal. Code, § 342, giving them power to lay out and construct county roads.

SAME—VOID FRANCHISE—PLEA OF RATIFICATION—NO ESTOPPEL IN CASE OF ULTRA VIRES. A water company that has made expenditures in reliance upon a franchise granted by public officers having no power to do so cannot claim a ratification, since the plea of estoppel does not prevail against the defense of *ultra vires.*

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered May 27, 1905, in favor of the defendants, on the pleadings, dismissing an application for a writ of mandamus to compel a town to grant a permit for the extension of a water system.   Affirmed.

*Blaine, Tucker & Hyland,* for appellant.

*Cooley & Horan* and *Bell & Austin,* for respondents.

RUDKIN, J.—The appellant here applied to the court below for a writ of mandate against the mayor and town council of the town of Monroe.   The application for the writ sets

[1] Reported in 82 Pac. 888.

forth the following facts: That the relator is a corporation organized and existing under the laws of the state of Washington; that, on the 17th day of June, 1901, the board of county commissioners of Snohomish county granted to the relator the right, privilege, authority, and franchise to lay down and maintain a line or lines of water mains or pipes, along streets and alleys in Monroe and Tyee City, in said Snohomish county, and along and across certain county roads in said county, for a period of fifty years from the date thereof; that immediately thereafter the relator, by authority of said franchise, and with the knowledge and approval of the board of county commissioners of said county and the inhabitants of said town of Monroe, laid water pipes in the streets and alleys of said town, at a cost of upwards of $3,500; that thereafter and in the month of January, 1903, the town of Monroe was incorporated as a town of the fourth class, under and by virtue of the laws of the state of Washington, and that the respondents are the mayor and town councilmen of said town; that on the 11th day of February, 1903, the town of Monroe passed an ordinance providing that no person or corporation should build, lay, construct, maintain, or extend any sewer or water system under any street, alley, sidewalk, or crosswalk, or make any excavation of the same within the town of Monroe, without first obtaining a permit so to do from the town council, and imposing a penalty for any violation thereof; that on the 7th day of April, 1904, one Frank Donner applied to the mayor and town council for a permit to construct a ditch from his residence to the center of one of the streets of the town, for the purpose of connecting with the relator's water system; that on the 13th day of April, 1904, the permit was refused, and that the respondents, without cause and without right, refused to permit the relator to connect its water system with any dwelling or business place in said town, or to extend its mains within the town in any manner whatever; and that the relator has no plain, speedy, or adequate remedy at law.

The petition prayed for a writ of mandate requiring the mayor and town council to grant a permit as theretofore requested by the said Donner, and to permit and allow the relator to exercise and enjoy the rights and privileges theretofore granted to it by the board of county commissioners of said Snohomish county.   An answer and reply were filed, but inasmuch as the court below granted judgment against the relator on the pleadings, a further statement of the issues is not material.   From the order denying the writ, this appeal has been prosecuted.

Two questions are discussed in the briefs and argument of counsel; first, the authority of the board of county commissioners to grant the alleged franchise; and second, the question of estoppel.   It would seem apparent that a board of county commissioners in this state has no power to grant any such privilege or franchise as is claimed in this case. The board has power to lay out, discontinue, or alter county roads or highways within their respective counties, and to do all other necessary acts relating thereto according to law, except in incorporated cities and towns where, by the terms of the act of incorporation, jurisdiction over the roads in the limits of such incorporations is vested in the corporate authorities thereof.   Bal. Code, § 342.   The privilege of laying water pipes under or along a public highway would seem to be wholly foreign to any express or implied power conferred by the above statute.   Furthermore, the power to grant a franchise such as is here claimed must be derived from the legislature.   It will not be implied even in favor of a municipal corporation, whose control over the public streets within its limits is ordinarily much greater than that conferred upon the county commissioners over public highways.

"In Great Britain express legislative sanction is necessary to warrant the laying down of *gas pipes* in the public highways; and so in this country it is also considered that the right to the use of the public streets of a city by a gas company, for the purpose of laying down its pipes, is a franchise which can be granted only by the legislature, or some local

or municipal authority empowered to confer it." 2 Dillon Mun. Corp. (4th ed.), § 691.

The same principle applies to the water pipes and sewers. Id., § 697.

Nor is there any foundation for the contention that the respondents are estopped to question the validity of the franchise claimed by the appellant. The appellant acquired its franchise from public officers whose powers are limited and defined by law. To permit the plea of ratification or estoppel to prevail against the defense of *ultra vires* in such cases would wholly deprive the public of the safeguards which the law intended for their protection in limiting and defining the powers of their public servants. As said by this court in *Arnott v. Spokane,* 6 Wash. 442, 33 Pac. 1063,

"The power to ratify a particular contract presupposes the power to make it in the first instance; and, if it is such that it could not be made originally except in a certain prescribed mode, where that mode is disregarded the power to ratify does not exist. A contract which is invalid because not authorized by law cannot be made valid and binding retroactively by any subsequent action of the corporate body, and a liability be thereby fastened upon the corporation."

In *State v. Pullman,* 23 Wash. 583, 63 Pac. 265, 83 Am. St. 836, the court quoted with approval 2 Herman on Estoppel, page 1365, as follows:

"The true principle in such cases is well settled that one cannot do indirectly, what cannot be done directly, and, where there is no power or authority vested by law in officers or agents, no void act of theirs can be cured by aid of the doctrine of estoppel. Where there is power, and it is irregularly exercised, or there are defects and omissions in exercising the authority conferred by law, the doctrine of equitable estoppel may well be applied by courts."

In that case the court further said:

"It is claimed, however, by the appellant, that, having received the benefits of the contract which the city entered into, it ought to be estopped from denying its validity; also

that it had ratified the contract by receiving the benefits.   It is well established that the power to ratify is coextensive only with the power to contract, and that an act which was illegal for want of authority on the part of the contracting powers cannot be ratified.   There has been a conflict of opinion on some branches of this question, but an investigation of the authorities will show, we think, that where courts have estopped municipalities from interposing the plea of *ultra vires,* and from escaping the responsibility of their acts, it has been where there has been a defect in the execution of the contracts, as in the issuance of bonds, etc., and not where there has been an absolute want of power on the part of the municipality to contract."

See, also, Dillon, Mun. Corp., *supra,* § 457; *Detroit v. Detroit City R. Co.,* 60 Fed. 161.

The case of *Spokane St. R. Co. v. Spokane Falls,* 6 Wash. 521, 33 Pac. 1072, is not in point.   The city council had the power to grant the franchise there in controversy, in the first instance.   It was a case of the defective or irregular exercise of an existing power, and not a case where the power to act in the first instance was entirely lacking.

There is no error in the record, and the judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR, ROOT, and CROW, JJ., concur.